**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEITH M. HAJDASZ,**

                               **Plaintiff,**

    **vs.**

                                              **6:23-CV-651**
                                              **(MAD/ML)**

**ADVANCE RECOVERY OF NEW YORK, INC.,**
**and EMPOWER FEDERAL CREDIT UNION,**

                             **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**DOMBROW LAW FIRM**              **RUSSELL W. DOMBROW, ESQ.**
499 South Warren Street
Suite 405
Syracuse, New York 13202-2609
Attorney for Plaintiff

**COSTELLO, COONEY LAW FIRM**      **ALEXANDRA L. CONDON, ESQ.**
5701 West Genesee Street
Camillus, New York 13031
Attorney for Defendant Advance
Recovery of New York, Inc.

**GORDON REES SCULLY**             **PETER G. SIACHOS, ESQ.**
**MANSUKHANI, LLP**                   **KARA S. MCCABE, ESQ.**
One Battery Park Plaza
Suite 28th Floor
New York, New York 10004
Attorneys for Defendant Empower
Federal Credit Union

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 1, 2023, Keith M. Hajdasz and Christinia Hajdasz, individually and on behalf of A.H., their minor child, (collectively "Plaintiffs") commenced this action alleging that Empower Federal Credit Union ("Empower") and Advanced Recovery of New York, Inc. ("ARNY") (together "Defendants") directly or indirectly wrongfully repossessed their vehicle. *See* Dkt. No. 1. Plaintiffs brought causes of action against both ARNY and Empower for alleged (1) violations of the Uniform Commercial Code ("UCC") § 9-609; (2) trespass to chattels; (3) deceptive practice under New York General Business Law ("GBL") § 349; and (4) negligent infliction of emotional distress. *See id.* Plaintiffs also brought claims against ARNY alleging (1) violation of the Fair Debt Collection Practices Act (the "FDCPA"); and (2) respondeat superior liability. *See id.*

On September 1, 2023, ARNY filed a motion to dismiss Plaintiffs' claims for (1) violations of the UCC; (2) trespass to chattels; (3) deceptive practice under the GBL; (4) negligent infliction of emotional distress. *See* Dkt. No. 15-2. The motion did not move to dismiss Plaintiffs' claims against ARNY for violations of the FDCPA or respondeat superior claims. *See id.* On September 5, 2023, Empower filed a motion to dismiss all claims against it. *See* Dkt. No. 18-1.

On September 22, 2023, Plaintiffs filed a cross-motion seeking relief to cure the deficiencies of the original complaint and dismissing the claim for negligent infliction of emotional distress. *See* Dkt. No. 20 at 15-16. On September 26, 2023, Plaintiff Keith M Hajdasz ("Plaintiff") filed a corrected cross motion seeking relief to cure the deficiencies of the original complaint, removing Christinia Hajdasz and A.H. from the matter, and dismissing the claims for negligent infliction of emotional distress. *See* Dkt. No. 21.

On November 1, 2023, ARNY and Empower filed separate responses in opposition to Plaintiff's cross motion to amend and in support of their motions to dismiss. *See* Dkt. Nos. 24, 26.

ARNY moved to dismiss all claims against it. *See* Dkt. No. 24. On November 10, 2023, Plaintiff

filed replies to Defendants' responses. *See* Dkt. Nos. 28, 29. Presently before the Court are

Defendants' motions to dismiss and Plaintiff's cross motion to amend.

## II. BACKGROUND

According to the complaint, Plaintiff is a resident of Oneida County, New York. *See* Dkt.

No. 21-4 at ¶ 1. ARNY is a corporation authorized to do business in New York State, and a

resident of Monroe County, New York. *See id.* at ¶ 2. Empower is a Federal Credit Union that

"engages in the business of financing or refinancing motor vehicles" and a resident of Onondaga

County, New York. *Id.* at ¶ 3. Defendants acted in concert to take Plaintiff's vehicle. *See id.*

"ARNY is an agent or employee of Defendant Empower" and at all times relevant to this action

"acted both on his own and at the direction of Defendant Empower[.]" *Id.* at ¶ 4.

On or about July 13, 2020, Plaintiff refinanced his 2018 Ford Fusion (hereinafter the

"Ford Fusion") with Empower. *See id.* at ¶ 12. The refinancing agreement (the "Loan

Agreement") granted Empower a security interest in the Ford Fusion as collateral. *See id.* at ¶ 13.

Plaintiff fell behind on payments and, on August 3, 2022, Empower's Asset Recovery Department

sent him "a 'REPOSSESSION WARNING' letter, which notified him he had to bring his account

to a current status by paying $730.10 within seven (7) days of the date of this letter or Defendant

Empower would repossess his 2018 Ford Fusion." *Id.* at ¶¶ 14-15.

On August 21, 2022, Empower ordered ARNY to repossess the Ford Fusion. *See id.* at ¶

16. On August 25, 2022, Empower called Plaintiff and told him that in addition to the $730.10 he

owed on the Ford Fusion, that he also needed to make payments which Plaintiff "understood" to

be applied to a "personal loan" he had with Empower consisting of $365.05 and $347.20. *Id.* at

¶¶ 16-17. Plaintiff paid $1,600.00 to Empower on August 26, 2022. *See id.* at ¶¶ 18-19. Based

on a conversation Plaintiff had with an Empower employee when he made the payment, Plaintiff believed "that the repossession would be canceled." *Id.* at ¶ 20.

Plaintiff alleges that Empower failed to update his loan payment history on his Ford Fusion, and on October 6, 2022, ARNY, at Empower's instruction, wrongfully repossessed the Ford Fusion from his home. *See id.* at ¶¶ 8-10, 21. The ARNY employee conducting the repossession told Plaintiff that he was acting on Empower's repossession order from August 21, 2022, and showed Plaintiff a tablet confirming that information. *See id.* at ¶ 23. ARNY repossessed the Ford Fusion despite Plaintiff physically placing himself between the ARNY repossession vehicle and the Ford Fusion, verbally objecting to the repossession, and offering to show the ARNY employee proof that he had paid the outstanding balance. *See id.* at ¶¶ 24-26.

Plaintiff alleges that on October 7, 2022, he demanded that Empower return the Ford Fusion. *See id.* at ¶ 27. "Empower admitted it mistakenly ordered the [Ford] Fusion repossessed, even though [Plaintiff had] redeemed the loan," and told Plaintiff "that it would have [ ] ARNY return the vehicle that day to [Plaintiff's] home." *Id.* at ¶ 28. During that conversation, Plaintiff was not told that he would need to pay additional money to have his Ford Fusion returned. *See id.* at ¶ 29. ARNY returned the Ford Fusion to Plaintiff's home and "apologized for the mistake." *Id.* at ¶ 30. Empower declined Plaintiff's demand that it "reimburse him for his $168.00 in lost wages" from when he "miss[ed] work to get the vehicle back[.]" *Id.* at ¶ 31.

On October 11, 2022, Plaintiff "received a [second]' Repossession Warning' letter" notifying him that he had to pay $365.05 within seven days of the date of the letter to make his account current or Empower would repossess the Ford Fusion. *Id.* at ¶¶ 32-33.[1] The October 11,

---

[1] In his response brief, Plaintiff states that the amended complaint "misstates" that the repossession warning letter was received on October 11, 2022, and claims that that was in fact

2022, letter was Plaintiff's first notice from Empower that he had defaulted on the loan a second time. *See id.* at ¶¶ 34-35. On October 12, 2022, Plaintiff paid Empower the $365.05 balance on the Ford Fusion. *See id.* at ¶ 36.

Plaintiff claims that "Empower intended to repossess the vehicle, regardless" of whether he redeemed the loan. *Id.* at ¶ 37. ARNY "successfully repossessed the vehicle" a second time over Plaintiff's protests and without a court order permitting repossession, and caused $579.27 in damage to the Ford Fusion while repossessing it. *See id.* at ¶¶ 38, 39.

Plaintiff claims that ARNY "did not sufficiently train or authorize its employees or agents . . . to refrain from repossessing vehicles when borrowers such as [Plaintiff] bring mistakes to the agents' attention to prevent the repossession." *Id.* at ¶ 41. Plaintiff further alleges that "Empower did not have sufficient operational or procedural controls in place to prevent the vehicle's wrongful repossession when this incident occurred" and that Defendants were unreasonable in repossessing his Ford Fusion. *Id.* at ¶¶ 42, 43. The amended complaint alleges that as a "proximate result" of Defendants' actions repossessing his Ford Fusion, he was "deprived of his vehicle, has incurred expenses for the damage [ ] ARNY caused to his vehicle, lost income," and that he, his wife, and their daughter "have suffered extreme embarrassment, shame, anxiety, and mental distress."[2] Dkt. No. 21-4 at ¶ 44.

### III. DISCUSSION

**A.    Legal Standards**

_____

when the letter was dated, and it was not received until later. *See* Dkt. No. 28 at 5. Plaintiff emphasizes that the letter was received "after the repossession occurred[.]" *Id.*

[2] The amended complaint alleges that "Plaintiff Christina Hajdasz and their daughter, A.H." suffered emotional damages, but otherwise the amended complaint does not mention Christina Hajdasz or A.H., and they are both removed from the caption. Dkt. No. 21-4 at ¶ 44. Therefore, the Court will not consider any alleged damages Christina Hajdasz or A.H. suffered.

### *1. Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face."  *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when

the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

**B.      FDCPA Claim Against ARNY**

The FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt, specifically: taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f. To plausibly allege a violation of the FDCPA, "'a plaintiff must establish three elements: (1) the plaintiff must be a "consumer" who is alleged to owe a debt or the target of efforts to collect a consumer debt; (2) the defendant must be a "debt collector"; and (3) the defendant must have engaged in conduct violating FDCPA requirements.'" *Palmer v. Simon's Agency, Inc.*, No. 6:19-CV-114, 2020 WL 1332829, *3 (N.D.N.Y. Mar. 23, 2020) (quotation and other citation omitted), *aff'd*, 833 Fed. Appx. 838 (2d Cir. 2020). "[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

For the limited purposes of Section 1692f(6) of the FDCPA, a debt collector "includes any person . . . in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). This provision "applies to repossession agencies, those businesses which are employed by the owner of collateral to dispossess the debtor of the collateral and return it to the owner." *Durandisse v. U.S. Auto Task Force*, No. 06-CV-2463, 2009 WL 2337133, *3

(S.D.N.Y. July 30, 2009) (citation omitted).  The parties agree that ARNY is a debt collector for the purposes of 15 U.S.C. § 1692f (6).  *See* Dkt. No. 15-2 at 9; Dkt. No. 24 at 3; Dkt. No. 28 at 4.

Whether a debt collector under the FDCPA "'had a present right to a vehicle via an enforceable security interest turns on the state's Uniform Commercial Code.'"  *Gerbasi v. NU Era Towing & Serv., Inc.*, 443 F. Supp. 3d 411, 413 (W.D.N.Y. 2020) (quotation omitted); *see also Vassel v. Palisades Funding Corp.*, No. 19-CV-3241, 2020 WL 2797274, *2 (E.D.N.Y. May 28, 2020).  "Failure to establish wrongful repossession precludes liability under the statute."  *Durandisse*, 2009 WL 2337133, at *3.

As an initial matter, ARNY argues that, under the terms of the Loan Agreement, Empower had a present right to possess the collateral upon Plaintiff's default and that the Loan Agreement is incorporated by reference into the pleadings.  *See* Dkt. No. 24 at 4-6.  "Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed."  *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, *6 (S.D.N.Y. Sept. 11, 2017) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, *5 (S.D.N.Y. Sept. 30, 2015) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, *3 (S.D.N.Y. Sept. 21, 2012)).

Here, Plaintiff clearly relied on the Loan Agreement in framing the amended complaint.  *See* Dkt. No. 21-4 at ¶¶ 13, 63; Dkt. No. 21-11 at 9-13.  Plaintiff does not object to the incorporation by reference, and states that it suits him.  *See* Dkt. No. 29 at 6 ("[Empower] wants to rely upon documents incorporated by reference, which suits the Plaintiffs").  As such, the Court

will consider the Loan Agreement in ruling on the matters subject to Defendants' motions to dismiss.

Section eight of the Loan Agreement states in the event of default "and to the extent permitted by law, [Empower] may declare the entire balance of [Plaintiff's] loan immediately due and payable, without prior notice or demand." Dkt. No. 18-10 at 35. Therefore, notice is not a prerequisite for Empower to exercise its enforcement rights. Section ten of the Loan Agreement provides that Empower "can accept late payments, partial payments, or any other payments, even if they are marked 'paid in full' without losing any of [its] rights under this Agreement." *Id.* Additionally, Section four of the Loan Agreement states that "[a]ny partial prepayment of Your Loan will not delay Your next scheduled payment." *Id.*

Plaintiff's payments were due on the 15th of the month. *See* Dkt. No. 18-1 at 6. Plaintiff alleges that he made a payment on August 26, 2022, but did not make any subsequent payments between September 2022 and October 2022. *See* Dkt. No. 21-11 at 10-11. Therefore, Plaintiff was in default on October 6, 2022. This is consistent with the business records, which reflect that, as of the date of repossession, Plaintiff was in default and his payment was twenty-two days past due. *See* Dkt. No. 18-7 at ¶ 15.

Plaintiff alleges that ARNY violated the FDCPA, "specifically, [S]ections 1692f, and 1692f (6)" because it did not have a present right to possess Plaintiff's Ford Fusion. *See* Dkt. No. 21-4 at ¶ 53; Dkt. No. 28 at 5. As ARNY notes, Plaintiff does not dispute that Empower had an enforceable security interest in the Ford Fusion. *See* Dkt. No. 24 at 4. Therefore, Plaintiff must allege that Empower did not have a present right to possess the collateral at the time of repossession. Plaintiff argues that Empower waived its statutory right to possess the Ford

Fusion.[3]  *See id.*  Plaintiff asserts four theories for the claim that Empower waived "its right to enforce its security interest by self-help repossession" in the following ways: (1) Empower did not provide notice prior to the repossession; (2) Plaintiff had a reasonable belief that he was not in default; (3) Empower accepted late payments; and (4) there was no "time is of the essence" clause in the Loan Agreement.  *See* Dkt. No. 21-11 at 9-14; Dkt. No. 28 at 5-6.

First, Plaintiff argues that Empower did not give him notice of the alleged default, which is evidenced by the fact that the October 11, 2022, repossession warning was dated after the repossession.  *See* Dkt. No. 28 at 5-6.  However, based on the plain language of the Loan Agreement, Plaintiff was in default and Empower had the right to declare the balance "immediately due and payable, without prior notice or demand."  Dkt. No. 18-10 at 35.

Second, Plaintiff argues that he "had no reason to believe he was in default when the repossession occurred[.]"  Dkt. No. 21-11 at 9-10.  Plaintiff contends that he "reasonably understood he was not in default when the repossession occurred on October 6, 2022[,]" *id.* at 14, and therefore Empower did not have a statutory right to repossession.  *See* Dkt. No. 21-4 at ¶¶ 57, 58.  However, under the terms of the Loan Agreement, a default occurs if payments are not made pursuant to the terms of the Loan Agreement.  *See* Dkt. No. 18-4 at 35; *see also* Dkt. No. 18-10 at 35 ("Your loan shall be in default if . . . (a) You do not make any payment or perform any obligation under this Agreement or . . .  (e) the Credit Union should, in good faith, believe Your ability to repay Your indebtedness hereunder is or soon will be impaired, time being of the very

---

[3] Plaintiff also argues that Empower has not shown any evidence substantiating its claim that Plaintiff had defaulted on the loan.  *See id.*  However, for the reasons stated above, Plaintiff's allegations support the conclusion that he was in default after failing to make any payments during September 2022 as required by the Loan Agreement, and Empower and ARNY are not required to offer further evidence of Plaintiff's default.  *See* Dkt. No. 21-11 at 10-11.

essence"). Therefore, Plaintiff's subjective knowledge or belief is irrelevant to Empower's ability to exercise its legally enforceable rights under the Loan Agreement.

Third, Plaintiff argues that Empower waived its right to repossession by making "oral modifications to the loan agreement" when it accepted his late payments. Dkt. No. 21-11 at 10. Plaintiff claims that during phone calls on August 26, 2022, and October 7, 2022, Empower told him "that he did not owe any more payments on the account." *Id.* at 10-11. Plaintiff claims that Empower's statements "constituted oral modifications of the Loan Agreement" such that on October 6, 2022, Empower no longer had a right to repossess the Ford Fusion without giving him notice. Dkt. No. 21-11 at 11. Plaintiff further claims that Empower "manifested this waiver in writing when it sent Repossession Warning letters to [Plaintiff] on August 3, 2022 . . . and again on October 11, 2022[.]" Dkt. No. 21-11 at 11. To the contrary, Plaintiff's affidavit shows that Empower was demanding payment on penalty of repossession. In his affidavit, Plaintiff testified that an Empower employee told him the repossession would be canceled after he made the required payment on August 26, 2022. *See* Dkt. No. 21-7 at ¶¶ 16-17. However, Plaintiff does not allege that the Empower agent told him he could continue missing future payments or that he did not need to make payments on September 15, 2022. After failing to make a payment in September, *see* Dkt. No. 18-7 at ¶ 15, ARNY repossessed his Ford Fusion on October 6, 2022. *See* Dkt. No. 21-7 at ¶ 19. ARNY returned the vehicle the next day and then, on October 11, 2022, Plaintiff received a second repossession warning notifying him that he had to "bring [his] account current by paying $365.05 within seven (7) days of the letter's date or [Empower] would repossess the Fusion." *Id.* at ¶¶ 31-33. Contrary to Plaintiff's contentions, notifying Plaintiff that he had seven days to pay a balance which was due less than a month previously is neither a "single accommodation" nor a "waiver[.]" Dkt. No. 21-11 at 12.

Plaintiff argues that Empower previously accepted late payments from him, and thereby "accept[ed] performance from the borrower after expiration of the time limit."  Dkt. No. 21-11 at 10, 12 (quoting *Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 217 (N.D.N.Y. 1999) (citations omitted)).  However, Plaintiff has not pleaded any specific late payments which Empower accepted prior to sending repossession warnings on August 3 and October 11.  Dkt. No. 21-11 at 12.  Nor do the letters warning of repossession constitute acceptance of late payment.  Therefore, Plaintiff has failed to allege that Empower waived its right to repossess his Ford Fusion by accepting late payments.

Fourth, Plaintiff argues that "absent an express contract providing that time is of the essence," Empower was required to give notice before repossessing the Ford Fusion, Dkt. No. 21-11 at 13, and that the Loan Agreement did not state that time was "of the essence."  Dkt. No. 28 at 6.  Plaintiff argues "[u]nder New York State law, absent an express contract provision providing that time is of the essence, if one party acquiesces in the other's late payments throughout the period of the contract, the tardy party is entitled to unequivocal notice that timely payment will be required in the future."  Dkt. No. 21-11 at 13 (citing *Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 216 (N.D.N.Y. 1999)).  Plaintiff has pleaded that "he fell behind on his payments," Dkt. No. 21-4 at ¶ 14, and on August 3, 2022, Empower "sent [Plaintiff] a 'REPOSSESSION WARNING' letter" which gave him seven days to pay the balance or else "Empower would repossess his 2018 Ford Fusion."  *Id.* at ¶ 15.  Even if time was not of the essence in the Loan Agreement, Empower unilaterally made time of the essence going forward by giving clear and unequivocal notice that the payment must be made as required by the Loan Agreement within a certain definite time.  *See In re 1111 Myrtle Ave. Grp. LLC*, 575 B.R. 567 (Bankr. S.D.N.Y. 2017) ("Under New York law, either party to a contract under which time was

not originally of the essence can unilaterally make time of the essence by giving clear and unequivocal notice that the contract must be performed within a certain reasonable time"); *accord Woodwork Display Co. v. Plagakis*, 137 A.D.2d 809, 811 (2d Dep't 1988).  Because Empower clearly made time of the essence after the August 3 repossession letter, the Court need not decide whether ARNY correctly argues that Section ten of the Loan Agreement contains "time is of the essence language" to hold that Plaintiff has failed to plausibly allege a claim.  Dkt. No. 24 at 7.

## F.     Supplemental Jurisdiction

In light of the Court's decision on the present motion, the only remaining claims are Plaintiff's state-law claims.  Thus, the Court will consider whether it should continue to exercise supplemental jurisdiction over the remaining state-law claims.

Federal courts may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28. U.S.C. § 1367.  "Disputes form part of the 'same case or controversy' . . . 'when they "derive from a common nucleus of operative fact."'"  *Romero v. Bestcare, Inc.*, No. 15-CV-7397, 2018 WL 1702001, *8 (E.D.N.Y. Feb. 28, 2018) (citations omitted).  "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  *Id.* "A district court's decision whether to exercise . . . jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  The Court may decline to exercise supplemental jurisdiction over a claim if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original

jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Finally, a court should weigh "the values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction over state-law claims.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, all of the claims over which the Court has original jurisdiction have been dismissed and this matter now involves only state law.  Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendant ARNY's motion to dismiss (Dkt. No. 15) is **GRANTED in part and DISMISSED in part**; and the Court further

**ORDERS** that Defendant Empower's motion to dismiss (Dkt. No. 18) is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's motion to amend (Dkt. No. 21) his FDCPA claim is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion to amend (Dkt. No. 21) his UCC, Trespass, N.Y. Gen. Bus. L., and Respondeat Superior claims is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 21, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge